# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**MILDRED MERCADO-PADILLA**,

   Plaintiff

   v.

**COMMISSIONER OF SOCIAL SECURITY**,

   Defendant.

Civil No. 15-2096 (BJM)

## OPINION AND ORDER

Mildred Mercado-Padilla ("Mercado") seeks review of the Commissioner's finding that she is not disabled and thus not entitled to disability benefits under the Social Security Act ("Act"). 42 U.S.C. § 423. Mercado contends the Commissioner's decision should be reversed for lack of substantial evidence, and that her case should be remanded with instructions to award disability benefits or, alternatively, for further proceedings. Docket Nos. 1, 15. The Commissioner opposed. Docket No. 17. This case is before me on consent of the parties. Docket No. 6. For the reasons set forth below, the Commissioner's decision is **REVERSED IN PART**, and the case is **REMANDED** for further proceedings.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review "is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence." *Manso-Pizarro* v. *Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, but not when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen* v. *Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Ass'n Gregoria Auffant, Inc.* v. *Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan* v. *Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must employ a five-step sequential analysis and consider all the record evidence. 20 C.F.R. §§ 404.1520, 404.1520(a)(3); *Bowen* v. *Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote* v. *Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir. 1982). Under this sequential analysis, the Commissioner first determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Id.* § 404.1520(c). If not, the disability claim is denied. Third, the Commissioner decides whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* §§ 404.1520(d), 404, subpt. P App'x 1. If the claimant's impairment meets or equals

one of the listed impairments, she is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four.

At Step Four, the administrative law judge ("ALJ") assesses the claimant's residual functional capacity ("RFC"), which is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, and then determines whether those impairments prevent the claimant from doing the work she previously performed. *Id.* §§ 404.1520(e), 404.1545(a)(1). If the claimant can perform her previous work, she is not disabled. *Id.* § 404.1520(e). If she cannot, the fifth and final step asks whether the claimant can perform other work available in the national economy in light of her RFC, age, education, and work experience. If she cannot, then she is entitled to disability benefits. *Id.* § 404.1520(f). The claimant has the burden of proof at Steps One through Four. *Santiago* v. *Sec'y of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). If the claimant has met that burden, the Commissioner has the burden at Step Five. *Ortiz* v. *Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

## BACKGROUND

In March 2012, Mercado applied for disability insurance benefits, claiming that since May 2011 (the alleged onset date) she had been disabled by depression and arthritis. Social Security Transcript ("Tr.") 269, 280, 283. Mercado was 49 years old on the alleged onset date, graduated high school, worked as an assembler in various industries until October 2008, and acquired sufficient quarters of coverage to remain insured through December 2013. Tr. 31, 280, 284. Mercado's benefits application was denied, both initially and on reconsideration. Tr. 194, 198. She requested a hearing before an ALJ, which was held in September 2013. Tr. 28, 200. The ALJ heard testimony from Mercado, who was represented by counsel, and from Pedro Roman, a vocational expert (the "VE"). Tr. 28.

At the hearing, Mercado relayed that she suffers from pain in her neck, back, shoulders, legs, "nerves," and knees, and that she visited a doctor to treat that pain. Tr. 34. She also testified that she suffers from an emotional condition, namely, "severe

depression." Tr. 38–39. After hearing Mercado's testimony, the ALJ posed two hypothetical questions to the VE and allowed Mercado's counsel to do the same. Tr. 44–45. The ALJ arrived at her decision in February 2014. Tr. 13–22. The ALJ found that Mercado had not engaged in substantial gainful activity since May 2011 and that Mercado suffered from two severe impairments: a "disorder of the spine and depression." Tr. 15. But the ALJ ultimately concluded that Mercado was not disabled, finding at Step Four that Mercado retained the residual functional capacity to perform past relevant work as an assembler. Tr. 22. Mercado appealed the ALJ's decision to the Appeals Council. Tr. 6. The Appeals Council denied Mercado's request for review in June 2015, rendering the ALJ's decision the final agency decision of the Commissioner. Tr. 1–3.

*Mental Impairment*

The record contains evidence relating to Mercado's mental impairment. In April 2011, Dr. Lucia San Miguel ("Dr. San Miguel") conducted a psychological evaluation of Mercado at Rovico Healthcare. Tr. 108–10, 355–57. Among other things, Dr. San Miguel reported that Mercado had a "depressed" mood but "adequate" attention and "normal" concentration. Tr. 110. Dr. San Miguel diagnosed Mercado with a severe, recurrent major depression. Tr. 110, 357. From August 2011 to July 2013, Mercado received treatment at the Administracion de Servicios de Salud Mental y Contra la Adiccion ("ASSMCA"). Tr. 138–157, 411. The ASSMCA treatment notes mostly indicate that Mercado had "adequate" attention and concentration. Tr. 139, 142, 144, 147, 150, 152, 155, 157.

In July 2012, Dr. Alberto Rodriguez ("Dr. Rodriguez"), a consultative examiner, conducted a psychiatric evaluation of Mercado. Tr. 119–23. Dr. Rodriguez opined that Mercado had "poor" attention and concentration, as she was "easily distracted" and could not "follow the sequence of the months in reverse" order. Tr. 121. Dr. Rodriguez further opined that Mercado could not manage her own funds, and diagnosed her with a major depressive affective disorder. Tr. 122. In September 2012, Dr. Jesus Soto ("Dr. Soto") reviewed the medical evidence in the record and concluded that Mercado's attention,

concentration, and ability to perform a normal workday or workweek without interruptions from psychological symptoms was "moderately limited." Tr. 174–75. Specifically, Dr. Soto opined that Mercado is able to maintain attention and concentration "for two-hour periods without undue interruptions." Tr. 175. Dr. Luis Umpierre ("Dr. Umpierre"), who also reviewed the record evidence, reached the same conclusions. Tr. 187–88. In her decision, the ALJ found at Step Three that Mercado "has moderate difficulties" with "regard to concentration, persistence or pace." Tr. 16. And at Step Four, the ALJ did not quarrel with the opinions of Drs. Soto and Umpierre as to "the likely effects of" Mercado's depression, namely, "difficulties with attention and concentration." Tr. 21.

*Physical Impairment*

Dr. Carlos Ramirez Jimenez ("Dr. Ramirez") treated Mercado from December 2011 to October 2012 for her physical ailments, which included, among other things, pain in her back, shoulders, and knees. Tr. 34, 124–31. In June 2012, Dr. Ramirez reported that Mercado had reduced range of motion in the lumbar spine, joint instability, reduced grip strength, sensory changes, reflex changes, and tenderness. Tr. 114. Dr. Ramirez found that Mercado's pain was "often" severe enough to interfere with attention and concentration. Tr. 115. And Dr. Ramirez noted that Mercado's pain was affected by depression and psychological factors. Tr. 115. Dr. Ramirez ultimately opined that Mercado could never lift any weight less than 10 pounds and that Mercado could never twist, bend, crouch, climb ladders, or climb stairs. Tr. 117. Dr. Ramirez also concluded that in an eight-hour workday Mercado could sit for 20 minutes and stand or walk for 15 minutes. Tr. 116.

In August 2012, Dr. Alfredo Perez Canabal ("Dr. Perez"), a consultative examiner, evaluated Mercado's physical impairments. Tr. 371–81. Dr. Perez reported that Mercado had adequate motor and sensory functions; full grip strength; the ability to pinch, handle, and carry; intact gait; full range of motion of motion in her upper extremities, with the exception of the external rotation of her right and left shoulder; full range of motion in her lower extremities; and intact reflexes. Tr. 372, 378, 379. On the other hand, Dr. Perez did

find some physical ailments which led him to diagnose Mercado with cervical myositis and low-back pain. Tr. 372, 373. For example, an x-ray of Mercado's spine revealed spondylosis at C5. Tr. 374. In August 2012, Dr. Cristina Ortiz ("Dr. Ortiz"), a state agency consultant physician, reviewed the medical evidence in the record and opined that Mercado could do the following: occasionally lift or carry up to 20 pounds; frequently lift or carry up to 10 pounds; stand, sit, or walk about six hours in an eight-hour work day; frequently climb stairs or ramps; occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, and crouch; and frequently crawl. Tr. 172–73. Dr. Cindy Ramirez Pagan ("Dr. Ramirez Pagan") reached the same conclusions. Tr. 186–87.

In her decision, the ALJ noted that Mercado visited the emergency room in January 2013. Tr. 19. At that time, Mercado complained of strong pain, particularly in her back. Tr. 135. The emergency room doctor assessed Mercado's condition as "fair," noted that Mercado had full range of motion in her extremities, and prescribed medication. Tr. 133. At Step Four, the ALJ "afforded great weight" to the physical RFC assessments of Drs. Ortiz and Ramirez Pagan, and "afforded little weight" to Dr. Ramirez's opinion. Tr. 21. The ALJ reasoned that the opinions of Drs. Ortiz and Ramirez Pagan were "consistent with" other evidence in the record, while Dr. Ramirez's opinion was "conclusory," "unsupported by his own treatment notes," and unsupported by the "unremarkable clinical findings" in the record. Tr. 21. In summarizing her findings, the ALJ noted that Dr. Perez found Mercado had "5/5 strength with [the] ability to pinch[,] handle[,] and carry," as well as that Dr. Perez found Mercado's extremities had full range of motion. Tr. 21–22.

***Hypotheticals to the VE***

After the VE confirmed that he had reviewed the file and heard Mercado's testimony, the ALJ asked the VE whether a person with Mercado's "academic preparation" could perform as an assembler, a job that requires "light work." Tr. 44. The ALJ added that this person could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could sit, stand, or walk about six hours in an eight-hour workday; had no limitations pushing

and/or pulling; could occasionally stoop, climb ladders, ramps, stairs, or scaffolds; could balance, kneel, and crawl; and could perform "unskilled work that is simple and routine." Tr. 44. In response, the VE stated, "the answer to *that* hypothetical is 'yes.'" Tr. 44 (emphasis added). The ALJ further queried whether the hypothetical person could perform as an assembler if he or she "only has the ability for occasional contract [sic] with coworkers and [inaudible]." Tr. 45. The VE responded in the affirmative, but qualified his answer, saying "if that persons keeps their [sic] productivity." Tr. 45.

Mercado's counsel then asked the VE to assume "a person as described on file considering their [sic] age, education and work experience, who is limited to a sedentary job — as described by" Dr. Ramirez's report. Tr. 45. The VE responded, "[o]n a light level, no." Tr. 45. Mercado's counsel further asked the VE to assume whether a person could perform light, unskilled, repetitive, and routine work when that person has a "limitation on keeping their [sic] attention and concentration for more than . . . 45 minutes approximately . . . ." Tr. 45. The VE responded in the negative, saying that "because 10% of a workday is 48 minutes . . . that exceeds what any employer [in] the national economy would allow." Tr. 45. The VE added that because a "person could not produce anything during 45 minutes a day," there "is no work" for such a person. Tr. 45. In her decision, the ALJ relied upon the VE's answers to her hypotheticals and implicitly rejected the testimony the VE gave in response to the questions posed by Mercado's counsel. Tr. 22.

**DISCUSSION**

Mercado contends the ALJ bungled the hypothetical questions posed to the VE, arguing that the hypotheticals failed to include her moderate limitations in maintaining concentration, persistence, and pace, as well as that these hypotheticals erroneously discounted Dr. Ramirez's opinions anent her physical limitations.

Mercado first contends that the ALJ's hypotheticals inadequately incorporated her moderate limitations in concentration, persistence, and pace. An ALJ's hypotheticals to a VE "should convey the claimant's limitations precisely in order to yield relevant

responses." *Maldonado* v. *Sec'y of Health & Human Servs.*, 972 F.2d 337 (1st Cir. 1992); *see also Cooper* v. *Bowen*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989) (VE's testimony cannot "constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all the claimant's limitations"). For "a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Arocho* v. *Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). And to "guarantee that correspondence," the ALJ "must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." *Id.*

In this case, Mercado underscores that the ALJ found at Step Three that she "has moderate difficulties" with "regard to concentration, persistence or pace." Tr. 16. And at Step Four, the ALJ credited the opinions of Drs. Soto and Umpierre as to "the likely effects of" Mercado's depression, namely, "difficulties with attention and concentration." Tr. 21. The Commissioner acknowledges that the ALJ found "moderate difficulties with" Mercado's "concentration and attention." Docket No. 17 at 14. And a review of the ALJ's hypotheticals to the VE confirms that she made no mention whatsoever of Mercado's moderate limitations in concentration, persistence, or pace—limitations stemming, in part, from her depression. *See* Tr. 44–45. Yet, the Commissioner contends that the ALJ's findings as to Mercado's limitations in concentration, persistence, and pace are "not inconsistent with her finding" that Mercado could perform "unskilled work." Docket No. 17 at 14.

Circuit courts have "rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Winschel* v. *Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *see also Mascio* v. *Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (same); *Varga* v. *Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (same); *Ramirez* v. *Barnhart*, 372 F.3d 546, 553–54 (3d Cir. 2004) (same); *Newton* v. *Chater*, 92 F.3d 688, 695

(8th Cir. 1996) (same); *Gonzalez* v. *Berryhill*, No. 16-1390, 2017 WL 1048049, at *1 (1st Cir. Mar. 7, 2017) (First Circuit noted Seventh Circuit's holding in *Varga* and Fourth Circuit's holding in *Mascio*, but found these two cases inapposite to resolve the case before the court because in *Gonzalez* "the ALJ included *both* a moderate limitation in concentration, persistence, and pace and a limitation to simple, routine step tasks in the first hypothetical presented to the vocational expert.") (emphasis added).

The overarching principle undergirding these cases is "that there is not an 'accurate and logical bridge' between" unskilled work and a claimant's mental-impairment-based limitations in concentration, persistence, and pace. *See Craft* v. *Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008); *see also Varga*, 794 F.3d at 814 ("whether" unskilled work "can be learned . . . is unrelated to the question of whether an individual with mental impairments—*e.g.*, with difficulties maintaining concentration, persistence, or pace—can perform such work"). This is because "some disability claimants 'may be unable to meet quotas, stay alert, or work at a consistent pace, *even at a simple, unskilled, routine job*.'" *White* v. *Comm'r of Soc. Sec.*, 572 F.3d 272, 287–88 (6th Cir. 2009) (quoting *Edwards* v. *Barnhart*, 383 F. Supp. 2d 920, 930–31 (E.D. Mich. 2005) (emphasis added)); *see also Mascio*, 780 F.3d at 638 ("the ability to perform simple tasks differs from the ability to stay on task").

*Winschel* aptly illustrates the foregoing principle and the proper result here. 631 F.3d at 1180. In that case "the ALJ determined at step two that" the claimant's "mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace." *Id.* at 181. In this vein, the Eleventh Circuit noted that nothing precludes the ALJ from considering his findings "at steps two and three" when assessing the claimant's RFC at Step Four. *See id.* at 1180 (citing circuit court cases). Yet, "the ALJ did not indicate that medical evidence suggested" the claimant's "ability to work was unaffected by" the limitations stemming from his mental impairment, "nor did he otherwise implicitly account for the limitation in the hypothetical." *Id.* at 1181. This being the case, the Eleventh Circuit

reversed and remanded the Commissioner's decision, holding that "the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert." *Id.*

As in *Winschel*, the ALJ in this case should have explicitly accounted for Mercado's difficulties with maintaining concentration, persistence, and pace when posing hypotheticals to the ALJ. *See id.* The ALJ found Mercado suffered from "moderate" limitations in concentration, persistence, or pace before assessing her mental RFC. And the ALJ made similar findings at Step Four, noting that Mercado's depression likely has effects on her attention and concentration. The opinions of Drs. Soto and Umpierre confirm as much, revealing that Mercado is able to maintain attention and concentration for two-hour periods without undue interruptions. These circumstances do not suggest that Mercado's "ability to work was unaffected by" the limitations stemming from her mental impairment. *See Winschel*, 631 F.3d at 1181("when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work *despite* limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations") (emphasis added).

Nor is there sufficient record evidence from which to conclude that the ALJ implicitly accounted for Mercado's difficulties with maintaining concentration, persistence, and pace. *See Winschel*, 631 F.3d at 1180. Though the VE acknowledged that he had reviewed the file prior to the hearing, there is no indication that the VE based his testimony on anything other than the hypotheticals posed by the ALJ and Mercado's counsel. *See Winschel*, 631 F.3d at 1180 (circuit courts have held "that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations") (collecting cases); *see also Thomas* v. *Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (before posing hypothetical questions to the VE, the ALJ asked the VE to credit the testimony of a doctor who testified about claimant's difficulties with maintaining concentration, persistence, and pace"); *accord Simila* v. *Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) ("if the record indicates

that the VE's testimony was confined to the limitations set forth in the ALJ's hypothetical question," it cannot be assumed that the VE's testimony speaks to any limitations not incorporated into that hypothetical).

Here, when the ALJ asked her first hypothetical question, the VE prefaced his affirmative response with "[t]he answer to that hypothetical question is . . . ." That the VE prefaced his answer in this manner makes it unreasonable to infer that the VE accounted for any limitations other than those expressly included within the ALJ's hypothetical. *See Simila*, 573 F.3d at 521 (court declined to "assume that the VE based his testimony on anything but th[e] hypotheticals" where, among other things, the ALJ posed a hypothetical to the VE and the "VE then prefaced his first comments with, 'Given the elements of the hypothetical . . .'"). And the second hypothetical question the ALJ posed to the VE, which related to a person's ability to get along with others, does not speak to Mercado's difficulties with maintaining concentration, persistence, and pace—as some disability claimants may be unable to stay on task even when working alone. *See, e.g.*, *Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010) (court noted a distinction between a claimant's difficulties with *temperament* and his or her difficulties with *concentration*).

Moreover, when answering the ALJ's second hypothetical question, the VE qualified his answer by noting that a person could perform as an assembler so long as "productivity" was maintained. In this vein, and in response to a question posed by Mercado's counsel, the VE relayed that a person would be unable to find work if he or she could not maintain attention and concentration for more than 45 minutes. While the opinions of Drs. Soto and Umpierre state that Mercado could maintain attention and concentration for two-hour periods, the ALJ never posed a hypothetical to the VE incorporating that time period. It is thus unclear whether the VE's testimony would have been any different with respect to someone who could maintain attention and concentration for two-hour periods. *See Ramirez*, 372 F.3d at 555 (remand required where "the vocational expert might have given a different answer to the hypothetical" had the ALJ properly

included the claimant's difficulties with concentration, persistence, or pace). Thus, the case must be remanded so that the ALJ may ask the VE a hypothetical question that incorporates Mercado's moderate difficulties with maintaining concentration, persistence, and pace.

With respect to the ALJ's assessment of her physical limitations, Mercado contends that the ALJ erroneously discounted the opinions of her treating physician, Dr. Ramirez. "Generally, a treating source's opinion on the nature or severity of impairments is given controlling weight if well-supported by medically acceptable clinical techniques and consistent with other substantial evidence in the record." *McNelley* v. *Colvin*, No. 15-1871, 2016 WL 2941714, at *1 (1st Cir. Apr. 28, 2016) (citing 20 C.F.R. § 404.1527(c)(2)). An ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." *MacGregor* v. *Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). And "[i]f the ALJ finds, as he may, that any treating physician's opinion is not credible, then he must comply with the regulations by explicating his grounds." *Nguyen*, 172 F.3d at 36; *see also Rivera* v. *Sec'y of Health & Human Servs.*, 986 F.2d 1407 (1st Cir. 1993) ("The ALJ is *not* required automatically to give controlling weight to any 'treating' doctor's report").

In this case, Dr. Ramirez opined that Mercado could never lift any weight less than 10 pounds and that Mercado could never twist, bend, crouch, climb ladders, or climb stairs. Dr. Ramirez further opined that in an eight-hour workday Mercado could sit for 20 minutes and stand or walk for 15. The ALJ considered Dr. Ramirez's opinions and expressly stated that she "afforded little weight" to those opinions. Tr. 21. *See MacGregor*, 786 F.2d at 1053. The ALJ reasoned that Dr. Ramirez's opinion was conclusory, unsupported by his own treatment notes, and unsupported by other record evidence. Tr. 19, 21. In this vein, the ALJ correctly noted that while Dr. Ramirez stated in his report that he treated Mercado every three to four months, or three to four times per month, Dr. Ramirez's treatment notes evidence only "sporadic" treatment. Tr. 19, 21, 383–90; *see* 20 C.F.R. §§ 404.1527(c)(2)(ii), (c)(4) (in deciding what weight to give to a medical opinion, the ALJ

may consider the "extent of the treatment relationship," as well as the consistency of a medical opinion with the evidence in the record).

Moreover, the ALJ found that Dr. Ramirez's opinions were overstated when compared to the other record evidence. In this regard, the ALJ stated that she "afforded great weight" to the opinions of Drs. Ortiz and Ramirez Pagan. Tr. 21. Both of these doctors found that Mercado could do the following: occasionally lift or carry up to 20 pounds; frequently lift or carry up to 10 pounds; stand, sit, or walk approximately six hours in an eight-hour work day; frequently climb stairs or ramps; occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, and crouch; and frequently crawl. An ALJ "is free to . . . choose between properly submitted medical opinions," *Balsamo* v. *Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and the record indicates that, when crafting the hypotheticals, the ALJ chose to credit the opinions of Drs. Ortiz and Ramirez Pagan—which were buttressed by Dr. Perez's opinions—over the opinions of Dr. Ramirez.

In choosing to credit the opinions of Drs. Ortiz and Ramirez Pagan, the ALJ noted that Dr. Perez,[1] who examined Mercado in August 2012, found that Mercado had "5/5 strength" and retained the ability to pinch, handle, and carry. Tr. 21. *See Keating* v. *Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 n.1 (1st Cir. 1988) ("It is within the Secretary's domain to give greater weight to the testimony and reports of medical experts who are commissioned by the Secretary."). The ALJ also noted that Dr. Perez found that Mercado had full range of motion in her extremities. Tr. 22. Other record evidence supported this finding. For example, when Mercado visited an emergency room in January 2013, the attending physician noted, among other things, that Mercado had full range of motion throughout her extremities. Tr. 133.

---

[1] Notably, the ALJ cited in her decision the report available at Exhibit 6F and erroneously suggested that the report was prepared by Dr. Nestor Mendez. Tr. 21. But because later portions of the ALJ's decision make clear that the ALJ correctly identified Dr. Perez as the medical expert who prepared the report available at Exhibit 6F, the ALJ's initial error was harmless. Tr. 21–22. *See, e.g.*, *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error").

In light of the above, and because the ALJ gave "good reasons" for giving little weight to Dr. Ramirez's opinion and for giving greater weight to the opinions of Drs. Ortiz, Ramirez Pagan, and Perez, substantial evidence supports the ALJ's findings with respect to Mercado's physical RFC. *See Makuch* v. *Halter*, 170 F. Supp. 2d 117, 125 (D. Mass. 2001) (the "ALJ must give 'good reasons' for the weight given to the treating physician's opinions"); *see also Coggon* v. *Barnhart*, 354 F. Supp. 2d 40, 54 (D. Mass. 2005) (substantial evidence supported the ALJ's findings where—as here—the ALJ "decided to give more weight to the opinions of the consultative examiner . . . and the non-examining . . . physicians because their opinions were, unlike [the treating physician's] opinion, 'consistent with and supported by the record as a whole'"). And because the ALJ did not err in declining to credit Dr. Ramirez's opinions with respect to Mercado's physical limitations, the ALJ was not required to incorporate those limitations into the hypotheticals posed to the VE. *See, e.g.*, *Arocho*, 670 F.2d at 375 (when crafting the hypothetical posed to the VE, the ALJ must decide "what testimony will be credited and resolv[e] ambiguities"). Thus, substantial evidence supports the ALJ's findings with respect to Mercado's physical RFC, and the ALJ need not revisit these findings on remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED IN PART**, and the case is **REMANDED** for further proceedings. On remand, the ALJ should pose a hypothetical to the VE that explicitly accounts for Mercado's moderate, mental-impairment-based difficulties with concentration, persistence, and pace.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 17th day of April 2017.

*S/Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge